1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF PUERTO RICO

**DEL VALLE GROUP,**

**Plaintiff,**

**v.**

**THE PUERTO RICO PORTS**                    **CIVIL NO. 10-1834 (GAG)**

**AUTHORITY, et al.,**

**Defendants.**

## OPINION AND ORDER

Plaintiff in this matter, Del Valle Group ("DVG" or "Plaintiff") brought suit against the Puerto Rico Ports Authority ("PRPA"); Alberto Escudero Morales ("Morales"), in his individual capacity and as the Executive Director of PRPA; and Milagros Rodriguez ("Rodriguez"), in her individual capacity and as President of the Board of Awards of PRPA (collectively, "Defendants"), seeking temporary, preliminary, and permanent injunctive relief and damages for alleged violations of Plaintiff's constitutional and civil rights.  The action is brought pursuant to 42 U.S.C. Section 1983, for alleged violations of Plaintiff's rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution.  Plaintiff contends that, through the use of a "No Litigation Clause," PRPA has debarred Plaintiff from bidding on projects offered for bid by PRPA in direct violation of Plaintiff's constitutional guarantees.

Presently before the court is Plaintiff's motion for preliminary injunction (Docket No. 3) and Defendants' motions to dismiss (Docket Nos. 71 & 73).  Plaintiff filed oppositions to Defendants' motions to dismiss (Docket Nos. 81 & 82).  The court ordered Defendants to show cause as to why Plaintiff's injunctive relief should not be granted (Docket Nos. 41 & 43).  Plaintiff filed a joint reply to Defendants motions (Docket No. 54).  After being granted leave by the court (Docket No. 62), Defendants filed a sur-reply (Docket No. 70).  After considering the parties' submissions and the

**Civil No. 10-1834 (GAG)**

pertinent law, the court **GRANTS in part and DENIES in part** Defendants' motions to dismiss

(Docket No. 71 & 73) and in turn **GRANTS in part and DENIES in part** Plaintiff's motion for

preliminary injunction (Docket No. 3).

## I.    Standard of Review

### A.    Motion to Dismiss

Under Rule 12(b)(1) a party may move the court to dismiss a complaint for lack of subject

matter jurisdiction at any time.  In ruling on a Rule 12(b)(1) motion, the court must construe the

complaint liberally and indulge in all reasonable inferences in favor of the plaintiff.  Aversa v.

United States, 99 F.3d 1200, 1210 (1st Cir. 1996).  A defendant may challenge the court's subject-

matter jurisdiction in either of two ways: a facial attack on the sufficiency of the plaintiff's

jurisdictionally-relevant pleadings in the complaint, or a factual challenge.  Torres-Negron v. J &

N Records, LLC, 504 F.3d 151, 162 (1st Cir. 2007).  A factual challenge involves a two-step inquiry.

Id.  "First, the court must determine whether the relevant facts, which would determine the court's

jurisdiction, also implicate elements of the plaintiff's cause of action."  Id. at 163.  If the

jurisdictional issue is intertwined with the merits of the plaintiff's case, the court must adopt the

summary-judgment standard, such that the court would only dismiss if the material jurisdictional

facts are beyond dispute and the defendant is entitled to dismissal as a matter of law.  Id.  Second,

if the jurisdictional issue is not so intertwined, the court may simply weigh the evidence at hand to

determine its competence to hear the case.  Id.

Under Rule 12(b)(6), a defendant may move to dismiss an action against him for failure to

state a claim upon which relief can be granted.  See Fed.R.Civ.P. 12(b)(6).  When considering a

motion to dismiss, the court must decide whether the complaint alleges enough facts to "raise a right

to relief above the speculative level."  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct.

1955, 1965 (2007).  In so doing, the court accepts as true all well-pleaded facts and draws all

reasonable inferences in the plaintiff's favor.  Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008).

However, "the tenet that a court must accept as true all of the allegations contained in a complaint

Civil No. 10-1834 (GAG)

is inapplicable to legal conclusions." Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged –but it has not 'show[n]'– 'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).

### B.    Preliminary Injunction

In considering whether a grant or denial of preliminary injunction will issue, the court must consider four factors: "(1) the plaintiff's likelihood of success on the merits; (2) the potential for irreparable harm in the absence of an injunction; (3) whether issuing an injunction will burden the defendants less than denying an injunction would burden the plaintiff; and (4) the effect, if any, on the public interest." Gonzalez-Droz v. Gonzalez-Colon, 573 F.3d 75 (1st Cir. 2009) (quoting Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 11 (1st Cir. 2008)). Of the four criteria listed above, a showing of the likelihood of success on the merits has been held to be "the touchstone of the preliminary injunction inquiry." Philip Morris, Inc. v. Harshbarger, 159 F.3d 670, 674 (1st Cir. 1998). "[I]f the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002).

### II.    Relevant Facts & Procedural Background

On July 10, 2001, DVG bid for the construction of a project known as the Wharves E&F Project, of which PRPA was the owner. On August 29, 2001, DVG, as the lowest bidder, was awarded the project. During the construction of the Wharves E&F Project, DVG encountered complications as a result of changes made by PRPA in the design of the project. On or around September 9, 2005, DVG presented PRPA with a claim for the costs of the delays incurred on the Wharves E&F Project in the amount of nearly $1,000,000. In accordance with its contract, DVG submitted its claim to the project's "Architect or Engineer," who was employed by PRPA. On or

**Civil No. 10-1834 (GAG)**

1   around June 1, 2010, after waiting five years for a response from PRPA, DVG filed suit against

2   PRPA in the Puerto Rico Court of First Instance, seeking to collect on this claim.

3   On or about April 12, 2010, PRPA issued an "Advertisement for Bids" for a project known

4   as the Mercedita Airport Project.   On April 16, 2010, DVG obtained copies of the bidding

5   documents.  Included amongst the Mercedita Airport Project bid documents was an unexecuted

6   proposed agreement, which was to be executed by the successful bidder for the project.  Article VIII,

7   Paragraph P, item 4 of this agreement (the "No Litigation Clause") provided: "The Contractor

8   certifies that it does not represent or will not accept to represent interests in conflict with those of

9   the Authority, and that he does not represent any complaint against the Commonwealth of Puerto

10   Rico, its agencies or instrumentalities." (See Docket No. 1-16 at 23, ¶ P.4)

11   On May 13, 2010, DVG submitted its bid for the Mercedita Airport Project.  With its bid of

12   $1,464,00, DVG was the lowest bidder for the project.  Internal memos dated May 17 and May 18

13   reflect recommendations by the Award Board to award the contract to DVG.  A letter dated May 21,

14   2010, to Engineer Garcia of PRPA, recommended that DVG be awarded the contract as it had

15   provided the lowest bid complying with the requirements established by PRPA.  On June 10, 2010,

16   9 days after DVG had filed suit on its Wharves E&F Project claim, an internal memo was distributed

17   by PRPA.  The memo requested a legal opinion on the implication of DVG's Wharves E&F claim

18   against PRPA and informed that the bid had not yet been awarded to DVG for the Mercedita Airport

19   Project.  On July 7, 2010, an internal document was given to the awarding board of PRPA.  The

20   document stated that, because DVG now had a pending lawsuit against PRPA, it was now in

21   violation of the No Litigation Clause, and as such they were retracting the prior recommendation to

22   award the Mercedita Airport Project to DVG.

23   A letter dated August 5, 2010 was sent to all of the bidders for the Mercedita Airport Project.

24   The letter informed all bidders that, although DVG was the lowest bidder, it had a pending lawsuit

25   agaisnt PRPA, and therefore was not awarded the project.  Instead, the project was awarded to the

26

27

28                                                    4

**Civil No. 10-1834 (GAG)**

second lowest bidder, Desarrolladora J.A. Inc.[1]

DVG sent a letter dated August 11, 2010 to defendants Morales and Rodriguez, requesting an appointment to review the Board of Awards' meeting minutes and the official meeting Act for the award recommendation.  On August 13, 2010, Representatives from DVG met with officers of PRPA, including Rodriguez, to review the Board's minutes.  The minutes of this meeting indicated that at some point Rodriguez informed DVG that PRPA's decision to reject its bid was based on the lawsuit instituted by DVG against PRPA.  PRPA cited the No Litigation Clause as partial grounds for this rejection.[2]

Since the disqualification of DVG's bid for the Mercedita Airport Project, DVG has submitted bids for two other PRPA projects.  These two projects are the Ceiba Airport Project and the Pier 3 Project.  With regard to the Ceiba Airport Project, DVG once again submitted the lowest bid.  However, as of the date of the complaint, DVG had not received anything from PRPA with respect to its bid on this project.  As to the Pier 3 Project, DVG asserts that, upon information and belief they were once again the lowest responsible[3] bidders.  In a letter dated August 12, 2010,

---

[1] The exact language of the award letter stated:

1.  The lowest bidder, the company [DVG], filed suit against [PRPA].

Based on the provisions of the PRPA Regulation 7496 [the Reglamento] for bids and Request for Proposals and the Contract Documents and Technical Specifications, the Board of Awards did not recommend the lowest bid.  In order to protect the best interests of the PRPA, including the use of publics [sic] funds, and to avoid any situation that may affect the works to be done at Mercedita airport in Ponce, the Board of Awards recommended the second lowest bidder, Desarrolladora J.A. Inc..

[2] Article VIII, Paragraph P, Item 4 on page 15 of the contract contains the No Litigation Clause.  (See Docket No. 1-16 at 23, ¶ P.4)

[3] A "responsible" bidder is a bidder which is capable of performing a contract based on a public agency's consideration of a number of "responsibility" factors, including ". . . ability and

5

**Civil No. 10-1834 (GAG)**

1  defendant Rodriguez returned DVG's Pier 3 bid to DVG unopened.  The letter accompanying the

2  bid stated that the bid was returned to DVG pursuant to the "Reglamento."[4]

3          On August 16, 2010, PRPA released an advertisement for bids for the LMMIA-USDA

4  Project.  The advertisement stated that "The [PRPA] will reject any bid submitted by any bidder

5  which represents interests in conflict with those of the Authority (PRPA), and has any complaint or

6  lawsuit against the Authority, the Commonwealth of Puerto Rico, its agencies or instrumentalities."

7          On October 28, 2010, the General Contractors of America ("GCA") filed an *amicus curiae*

8  espousing its belief that the existence of PRPA's No Litigation Clause presents a significant public

9  concern to the entire construction industry in Puerto Rico.

10  **III.    Discussion**

11          **A.      Defendants' Motions to Dismiss**

12                  **1.      PRPA and the Official Defendants' Motion to Dismiss (Docket No. 73)**

13          Co-defendants PRPA and its Board of Awards; Morales and Rodriguez in their respective

14  official capacities as Executive Director of the PRPA and as President of the Ports Authority Board

15  of Awards (collectively, "PRPA Defendants") moved to dismiss Plaintiff's claim under Fed. R. Civ.

16  P 12(b)(1) alleging that the PRPA Defendants are immune from suit in federal court by the Eleventh

17  Amendment immunity.

18          This court, in Orocovis Petroluem Corp. v. P.R. Ports Authority, 2010 WL 3981665 (D.P.R.)

19  (08-2359), recently ruled that PRPA and its officials are indeed cloaked with Eleventh Amendment

20  immunity when summoned to answer suit in federal court.  In reaching this ruling, the court adopted

21  the holding of the District of Columbia Circuit in PRPA v. Fed. Maritime Comm'n, 531 F3d 868

22  _____

23  capacity, capital, character and reputation, competence and efficiency, energy, experience, facilities,

24  faithfulness, fraud or unfairness in previous dealings, honesty, judgment, promptness, quality of
    previous work, and suitability to the particular task."  Bruner and O'Connor on Construction Law

25  § 2:94, Phillip L. Bruner and Patrick J. O'Connor, Jr. (May 2003) (citations omitted).

26          [4] The Reglamento is the Regulation for Bids and Solicitation of Proposals of the PRPA,

27  Regulation No. 7496 of May 1, 2008 (Docket No. 1-6).

28                                              6

Civil No. 10-1834 (GAG)

(D.C. Cir. 2008).  The D.C. Circuit held that, when applying the First Circuit's <u>Fresenius</u> test[5], PRPA constitutes an arm of the state for purposes of establishing Eleventh Amendment immunity.  In conducting its analysis, "the sister circuit examined the legislative intent of PRPA's enabling statutes; the Commonwealth's direct control over PRPA through the composition of its governing board; and the vulnerability of the Commonwealth fisc to liabilities arising from PRPA's operations."  <u>Orocovis Petroluem Corp,</u> 2010 WL 3981665 at *1.  The D.C. Circuit court found that each of these factors weighed in favor of granting immunity.  <u>See</u> <u>PRPA v. Fed. Maritime Comm'n,</u> 531 F.3d at 874-80.  Although not representing binding precedent, this court agreed with the D.C. Circuit's analysis and adopted its finding.[6]  In light of this court's ruling in <u>Orocovis,</u> the court finds

───────────────

[5] In <u>Fresenius Medical Care Cardiovascular Resources, Inc. v. P. R. & the Caribbean Cardiovascular Center Corp.,</u> 322 F.3d 56, 64-68 (1st Cir. 2003), the First Circuit adopted a two-prong test for determining whether or not an entity is immune under the Eleventh Amendment.  Under the first prong of the test, the court determines whether the state has structured the entity to share its Eleventh Amendment immunity.  <u>Id.</u>  If the relevant factors conclusively show that it has, Eleventh Amendment immunity applies and the inquiry stops there.  <u>Id.</u>  However, when the indicia are inconclusive, then the court must analyze the second prong and determine whether the state's treasury is actually threatened by the lawsuit.  <u>Id.</u>

[6] In its Opposition (Docket No. 81), DVG argues that this court, in <u>Orocovis,</u> should not have adopted the D.C. Circuit court's analysis, contending that the D.C. Circuit misapplied the <u>Fresenius</u> test in <u>PRPA v. Fed. Maritime Comm'n.</u>  (<u>See</u> Docket No. 81 at 6.)  The court disagrees and finds that the <u>Fresenius</u> factors weigh in favor of finding PRPA immune.  However, even under the pre-Fresenius test, as applied in <u>Royal Caribbean Corp. v. P.R. Ports Auth.,</u> 973 F.2d 8 (1st Cir. 1992), the court's conclusion does not change.  Under the previous test, the court focused primarily on the "type of activity" at issue, considering whether the function was governmental or proprietary.  <u>Id.</u> at 12 (explaining conflicting rulings on the question of PRPA's immunity when suit concerned proprietary as opposed to governmental function).  Here, the function at issue is the awarding of bids for government contracts.  The court finds this act to be an inherently governmental function.  <u>See e.g.</u> <u>E.W. Wiggins Airways, Inc. v. Mass. Port Auth., 362 F.2d 52 (1st Cir. 1966)</u>  (although discussed in context of antitrust law exemption, describing MA Port Authority's decision to contract with operator as a "valid governmental function"); <u>Padgett v. Lousiville and Jefferson County Air Bd.,</u> 492 F.2d 1258, 1258 (6th Cir. 1974) (public invitation for bids in contracting for cab service at airport was exercise of governmental function); <u>Seneca Mineral Co., Inc. v. County of Chaurauqua,</u> 797 F. Supp. 237, 241 (W.D.N.Y. 1992) (citing case law describing bidding process as a "quasi-judicial governmental function") (citations omitted).  Therefore, today's ruling is

Civil No. 10-1834 (GAG)

that PRPA is immune to suit in federal court.[7]  Accordingly, the court **GRANTS in part** the PRPA

Defendants' motion to dismiss (Docket No. 73) and **DISMISSES** all of Plaintiff's claims against

PRPA, and its Board of Awards, as well as all claims for monetary relief against Morales and

Rodriguez in their official capacities.

However, this ruling does not preclude the court from considering all of DVG's claims

against the PRPA Defendants.  In its complaint, Plaintiff requests prospective injunctive relief

against future enforcement of the No Litigation Clause as well as future use of the exclusionary

language found in PRPA's advertisement for bids.  (See Docket No. 2 at ¶ I.)  In Ex Parte Young,

the Supreme Court recognized jurisdiction in the federal courts to hear such suits, even in light of

an entity's Eleventh Amendment immunity.  See Ex Parte Young, 209 U.S. 123 (1908).  Similarly,

the First Circuit has recognized the district court's jurisdiction to preside over suits to enjoin state

officers from committing unconstitutional actions.  See Vaqueria Tres Monjitas, Inc. v. Irizarry, 587

F.3d 464, 477-78 (1st Cir. 2009).  "Such suits, however, may only seek prospective injunctive or

declaratory relief; they may not seek retroactive monetary damages or equitable restitution."  See id.

at 478 (citing Edelman v. Jordan, 415 U.S. 651, 664-65 (1974)).  Accordingly, the court **DENIES**

**in part**, the PRPA Defendants' motion to dismiss as to Plaintiff's claims for prospective injunctive

relief against Morales and Rodriguez in their official capacities.

### 2.    Morales' and Rodriguez' Motion to Dismiss (Docket No. 71)

Co-defendants Morales and Rodriguez, in their individual capacities ("Individual

---

consistent with the First Circuit's findings in Royal Caribbean, 973 F.2d at 12, and in PRPA v. M/V
Manhattan Prince, 897 F.2d 1, 10 (1st Cir. 1990).

[7] DVG asserts in its opposition that "as recently as July 27, 2010, this Honorable Court held
that the PRPA is not an arm of the state." (See Docket No. 81 at 19.)  In support of this assertion,
DVG cites Diaz v. PRPA, 2010 WL 2991251 (2010), contending that when analyzed under the
Fresenius test, PRPA was found to not be an arm of the state.  However, DVG is incorrect in this
averment as the court in Diaz did not apply the Fresenius test to its analysis of PRPA.  Id. at *1
Therefore this court's prior ruling does not persuade the court today.

Civil No. 10-1834 (GAG)

1  Defendants") moved to dismiss Plaintiff's claim under Fed. R. Civ. P 12(b)(1) and 12(b)(6), alleging

2  that DVG has failed to state a claim upon which this court can grant relief, and, in the alternative,

3  that both co-defendants are entitled to qualified immunity for the damages alleged.

4  **a.    DVG's Due Process Claim**

5      In its complaint, DVG alleges a violation of its procedural due process rights under the

6  Fourteenth Amendment to the U.S. Constitution. (See Docket No. 1 at 65.) In order to state a valid

7  due process claim under Section 1983, DVG must show that: (1) it had a property or liberty interest

8  and (2) that defendants, acting under color of state law, deprived it of that interest without providing

9  a constitutionally adequate procedure. Aponte-Torres v. University of P.R., 445 F. 3d 50, 56 (1st

10  Cir. 2006). To determine whether the interest claimed is a property interest protected by the

11  Constitution, the party making the claim is required to show that it has a "legitimate claim of

12  entitlement" or "more than a unilateral expectation" to a particular benefit. Board of Regents v.

13  Roth, 408 U.S. 564, 577 (1972).

14      DVG claims the deprivation of both a liberty interest and a property interest in its claim for

15  relief. (See Docket No. 1 at ¶¶ 366, 367.) DVG alleges that it obtained a protected property interest

16  in its previous bids for the Mercedita Airport Project and the Ceiba Airport Project, for both of which

17  it was the lowest responsible bidder. (See Docket No.1 at ¶ 366.)

18      In Smith & Wesson v. U.S., the First Circuit recognized that there is no property interest

19  implicated by the right to bid on government contracts. 782 F.2d 1074, 1081 (1st Cir. 1986) (citing

20  Delta Data Systems Corp. v. Webster, 744 F.2d 197, 206 (D.C. Cir. 1984) ("Award procedures are

21  not designed to establish private entitlements to public contracts . . . .")); see also id. (citing Board

22  of Regents, 408 U.S. at 577 (invitation by state to determine whether party is a contract candidate

23  does not give bidder "a legitimate claim of entitlement")); Redondo-Borges v. U.S. Dept. of Housing

24  and Urban Development, 421 F.3d 1, 9 (1st Cir. 2005) (denying plaintiff a property interest in

25  awarded bid even when bid was awarded and then revoked). Accordingly, DVG is unable to

26  demonstrate a recognized property interest in its previous bids.

27

Civil No. 10-1834 (GAG)

1    DVG also alleges a liberty interest in its ability to bid on future projects offered by the

2    Commonwealth of Puerto Rico and its instrumentalities.  (Id. at ¶ 367.)  The First Circuit has also

3    recognized a limitation on a bidder's ability to allege a deprivation of a liberty interest, holding that

4    such an interest is only implicated "when a company is barred from the procurement process, or

5    eliminated from it, because of charges of fraud or dishonesty made without an opportunity for a

6    hearing on those charges."  Smith & Wesson, 782 F.2d at 1081.

7    With regard to DVG's claim of a deprived liberty interest, it has failed to establish that it was

8    eliminated from the bidding process because of charges of fraud or dishonesty.  PRPA has made no

9    such allegation against DVG.  Instead, PRPA has excluded DVG from the bidding process because

10   of DVG's pending lawsuit against PRPA.  Consequently, the application of PRPA's procedural

11   exclusion does not implicate a recognized liberty interest, see id., nor does it establish a property

12   interest in a disappointed bidder.  See Redondo-Borges, 421 F.3d at 9 ("[W]ould-be bidder cannot

13   claim a property interest in the responsibility-determination procedure alone.").  Therefore, DVG is

14   unable to demonstrate a recognized liberty or property interest of which it was deprived.

15   Accordingly, the court **DISMISSES** Plaintiff's due process claim.

16                          **b.    DVG's Equal Protection Claim**

17   DVG also alleges a violation of its rights under the Equal Protection Clause of the Fourteenth

18   Amendment.  (See Docket No. 1 at ¶ 390.)  In its reply brief to Defendants' show cause motions,

19   DVG describes its suit as a "class of one" equal protection claim.  (See Docket No. 54 at 24.)  In a

20   "class of one" equal protection claim a plaintiff must allege that it has been intentionally treated

21   differently from others similarly situated.  See Village of Willowbrook v. Olech, 528 U.S. 562, 564

22   (2000). [T]he burden [is] on the plaintiff in class-of-one cases to show such identity of entities and

23   circumstances to a high degree."  Rectrix Aerodome Center v. Barnstable, 610 F.3d 8, 16 (1st Cir.

24   2010); see also Pagan v. Calderon, 448 F.3d 16, 34 (1st Cir. 2006) (recognizing that plaintiffs "face[

25   ] a steep uphill climb" when grounding equal protection claims in the denial of a discretionary state

26   benefit).  "In general terms, a plaintiff not relying on 'typical' impermissible categories, such as race

27

28                                          10

Civil No. 10-1834 (GAG)

or religion, must show that he was intentionally treated differently from others similarly situated, that no rational basis exists for that difference in treatment, and that the different treatment was based on a malicious or bad faith intent to injure." Buchanan v. Maine, 469 F.3d 158, 178 (1st Cir. 2006)

Although argued in its reply brief (see Docket No. 54 at 23-24), Plaintiff's complaint fails to allege how other bidders were similarly situated to DVG at the time its bids were rejected or when it was excluded from the bidding process.  "When a motion to dismiss is based on the complaint . . . the facts alleged in the complaint control." Mihos v. Swift, 358 F.3d 91, 99 (1st Cir. 2004). Because of the high burden placed on plaintiffs in "class of one" claims, failure to sufficiently allege such facts in the complaint has previously proven fatal to similar claims.  See Pagan, 448 F.3d at 35 (affirming district court's dismissal of "class of one" equal protection claim when Plaintiff failed to plead facts indicating that awarded party was similarly situated); see also Centro Medico Del Turabo, Inc., v. Feliciano De Melecio, 406 F.3d 1, 9 (1st Cir. 2005) (failure to identify that other entities were similarly situated was "fatal to equal protection claim").  The court finds that DVG has failed to sufficiently plead its "class of one" equal protection claim, and accordingly **DISMISSES** this claim.

### c.    DVG's First Amendment Claim

With respect to DVG's claim of violation of its rights under the First Amendment, the court finds that it has successfully stated a claim upon which relief can be granted.  The court will further explain its reasoning in its analysis of DVG's prayer for preliminary injunctive relief. See infra, Part B.

### d.    Qualified Immunity

The Individual Defendants also moved to dismiss all claims against them based on the doctrine of qualified immunity.  (See Docket No. 71 at 20-26.)  The qualified immunity doctrine shields government officials performing "discretionary functions from . . . civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would not have known." Harlow v. Fitzgerald, 457 U.S. 800, 801 (1982); see also Rivera-Ramos v. Ramon, 156 F.3d 276 (1st Cir. 1998).  "Whether a right is clearly established . .

Civil No. 10-1834 (GAG)

1  . depends on the clarity of the law at the time of the violation and whether, on the facts of the case,

2  a reasonable official would know that his actions violated plaintiffs' constitutional rights."

3  Concepcion Chaparro v. Ruiz-Hernandez, 607 F.3d 261, 267-68 (1st Cir. 2010).  When dealing with

4  unanswered questions of constitutional law, courts are wary of holding individuals liable for actions

5  that may have resulted in constitutional violations.  See Hope v. Pelzer, 536 U.S. 730 (2002)

6  (quoting Saucier v. Katz, 533 U.S. 194, 206 (2001) ("qualified immunity operates 'to ensure that

7  before they are subjected to suit, officers are on notice their conduct is unlawful.'")); see also

8  Valiente v. Rivera, 966 F.2d 21, 23-4 (1st Cir. 1992) (granting qualified immunity when law was

9  unclear as to whether defendant had violated plaintiff's First Amendment rights).

10        As the court has dismissed all of the other causes of action against Morales and Rodriguez

11  in their individual capacities, only Plaintiff's First Amendment claim remains before the court.  With

12  respect to this claim, the Individual Defendants' qualified immunity defense is clearly applicable,

13  as the court is answering an open question of law to which there is no clearly established precedent.

14  See Board of County Commissioners v. Umbehr, 518 U.S. 668 (1996) (Supreme Court stating that

15  at this time it "need not address the possibility of suits by bidders or applicants for new government

16  contracts"); Centro Medico Del Turabo, Inc., 406 F.3d at 9;  Prisma Zona Exploratoria de P.R., Inc.

17  v. Calderon, 310 F.3d 1, 7 (1st Cir. 2002) (First Circuit cases recognizing the First Amendment

18  rights of disappointed bidders as "an open question"); compare Oscar Renda Contracting, Inc. v.

19  Lubbock, 463 F.3d 378, 385 (5th Cir. 2006) and Lucas v. Monroe County, 203 F.3d 964, 973 (6th

20  Cir. 2000) (both granting First Amendment rights to bidders for government contracts) to

21  McClintock v. Eichelberger, 169 F.3d 812, (3rd Cir. 1999) (denying bidders for government

22  contracts protection under First Amendment).  In light of the unsettled status of this question of law,

23  reasonable officers in the Individual Defendants' positions could not have known they were violating

24  Plaintiff's First Amendment rights. Therefore, the court **GRANTS** the Individual Defendants'

25  motion to dismiss and **DISMISSES** Plaintiff's First Amendment claims against Morales and

26  Rodriguez in their individual capacities.

27

28

Civil No. 10-1834 (GAG)

### e.   DVG's State Law Claims

DVG also alleges two state law claims– tortious interference with contractual relationships and defamation– against PRPA, as well as Morales and Rodriguez in their individual capacities.  The state law claims against PRPA are **DISMISSED** on grounds of Eleventh Amendment immunity.  See supra, Section III. A(1).  As to the Individual Defendants, the court, in its discretion, chooses not to grant supplemental jurisdiction over the Puerto Rico State law claims.  See Pejepscot Indus. Park v. Me. Cent. R.R. Co., 215 F.3d 195, 200 (1st Cir. 2000) (citation omitted) ("The decision whether to exercise supplemental jurisdiction is left to the sound discretion of the district court.").  The state law claims against Morales and Rodriguez involve an assessment of whether DVG's exclusion from PRPA's bidding process interfered with its ability to form other contractual relationships.  The facts involved in these state law claims are not necessarily intertwined with the sole remaining federal claim for injunctive relief still before this court.  As these claims do not "derive from a common nucleus of operative facts," the court declines to exercise supplemental jurisdiction over them.  See United Mine Workers of America v. Gibbs, 383 U.S. 715, 725 (1966) ("[I]f [considerations of judicial economy, convenience and fairness to litigants] are not present a federal court should hesitate to exercise jurisdiction over state claims.").  Therefore, the court **DISMISSES** the state law claims against Morales and Rodriguez without prejudice.

### B.   Plaintiff's Prayer for Preliminary Injunctive Relief

Plaintiff, in its remaining prayer for relief, requests that this court enjoin Defendants from granting and from further utilizing the No Litigation Clause in future contracts for bids.  In its most recent submission to this court (Docket No. 54), Plaintiff resigns itself to the fact that its initial prayers for injunctive relief may no longer be justiciable by an order of this court.  Id. at 6-8.  Between the filing of the complaint (Docket No. 1) and the filing of Defendant's show cause motions (Docket Nos. 41 & 43) the contracts, for which DVG had placed bids (the Mercedita Airport Project and the Pier 3 Project), have been awarded to other contractors and notices have been issued to said contractors to proceed with the work.  (See Docket No. 43 at 3 n. 4.)  The Ceiba Airport Project was

Civil No. 10-1834 (GAG)

1  also awarded after the show cause motions were filed by Defendants. Id. As a result of these recent

2  developments, Plaintiff has now limited its request for preliminary injunctive relief to a declaration

3  enjoining: (1) the future use of the No Litigation Clause as it appears in PRPA's bidding contract;

4  (2) the future inclusion of the bid rejection grounds as set forth in the advertisement for BIDS for

5  the LMMIA-USDA Project.

6       As previously recognized, the court must assess four factors in considering whether or not

7  to grant a party's request for preliminary injunction: "(1) the plaintiff's likelihood of success on the

8  merits; (2) the potential for irreparable harm in the absence of an injunction; (3) whether issuing an

9  injunction will burden the defendants less than denying an injunction would burden the plaintiff; and

10  (4) the effect, if any, on the public interest." Boston Duck Tours, 531 F.3d at 11. The court will

11  consider each in turn.

12            **1.**      **DVG's First Amendment Claim**

13       As all of Plaintiff's other claims for preliminary relief have been dismissed by the court, the

14  court will address the merits of Plaintiff's motion for preliminary injunction (Docket No. 3) with

15  respect to its First Amendment claim.

16       In its reply brief (Docket No. 54), DVG contends that the inclusion of the No Litigation

17  Clause in PRPA's contract for bids represents a *de facto* violation of a prospective bidder's

18  fundamental right to petition the government for redress. Plaintiff's verified complaint alleges the

19  "chilling effect" of the regulation's overly-broad language, specifically addressing the included

20  undefined terminology – "interests in conflict," "complaint," and "lawsuit." (See Docket No. 1 at

21  45-48.) Language similar to that of the No Litigation Clause can also be found in the Advertisement

22  for BIDS for the LMMIA-USDA, which specifically states that PRPA "will reject any bid submitted

23  by any bidder which represents interests in conflict with those of the Authority (PRPA), and has any

24  complaint or lawsuit against the Authority, the Commonwealth of Puerto Rico, its agencies and

25  instrumentalities." (See Docket No. 1-42.)

26

27

28                                            14

Civil No. 10-1834 (GAG)

1

**a.      Likelihood of Success on the Merits**

2      Of the four criteria relevant to the court's granting of a preliminary injunction, a showing of

3   the likelihood of success on the merits has been recognized as the most critical element.  U.S. v.

4   Weikert, 504 F.3d 1, 5 (1st Cir. 2007).  Defendants asseverate that DVG is unable to satisfy this

5   critical requirement as it is unable to demonstrate that bidders for government contracts are granted

6   the same protections under the First Amendment as public employees and independent contractors

7   with pre-existing relationships.  The court recognizes the absence of any clear precedent on this

8   paramount legal issue and therefore will consider all relevant persuasive law in conducting its

9   analysis.

10      "The right to petition the courts for redress . . .  implicates the First Amendment right of free

11   speech."  Powell v. Alexander, 391 F.3d 1 (1st Cir. 2004) (citing United Mine Workers of Am. v.

12   Ill. State Bar Ass'n, 389 U.S. 217, 222 (1967)).  The Supreme Court has held that, "the rights

13   protected by the First Amendment are inseparable and that no sound basis exists for according

14   greater protection to one right over another.  McDonald v. Smith, 472 U.S. 479, 485 (1985).

15      In Board of County Commissioners v. Umbehr, 518 US 668 (1996), and  O'Hare Truck

16   Serv. Inc. v. City of Northlake, 518 U.S. 712 (1996), the Supreme Court held that independent

17   contractors are protected against termination of their at will government contracts for exercising their

18   rights under the First Amendment.  However, the Court in Umbehr specifically stated that, because

19   the case involved the termination of a pre-existing contractual relationship, it was not addressing "the

20   possibility of suits by bidders or applicants for new government contracts who cannot rely on such

21   a relationship." Id. at 685.  The First Circuit has taken a similar approach to this question.  In Centro

22   Medico Del Turabo, Inc., the First Circuit did not answer the question whether bidders for new

23   contracts have the same First Amendment protections as independent contractors with pre-existing

24   relationships. 406 F.3d at 10.  Instead, assuming hypothetically that bidders were granted these

25   rights, the Court dismissed the plaintiff's claim on causation grounds, holding that the plaintiff's

26   could not demonstrate that their protected activity was a substantial or motivating factor in the

27

28                                              15

**Civil No. 10-1834 (GAG)**

defendant's decision to deny their bid.  Id. at 10-11.

Other circuits have interpreted the Supreme Court's ruling in Umbehr differently.   In McClintock v. Eichelberger, 169 F.3d 812, the Third Circuit construed the Supreme Court's evasion of this issue to indicate that the Court was unwilling to extend this protection to independent contractors that did not have pre-existing commercial relationships with the state.  Id. at 817.   In a lengthy dissent, Judge Roth, pointed to the Supreme Court's rulings in Rutan v. Republican Party of Illinois, 497 U.S. 62 (1990), Umbehr, and O'Hare, to support her conclusion that the majority had decided the McClintock case incorrectly.  See McClintock, 169 F.3d at. 818-20 (Roth, J. dissenting). In Rutan, the Court held that hiring decisions, based on a government employee's party affiliation, were impermissible under the First Amendment. 497 U.S. at 65.  Later, in Umbehr and O'Hare "the Court rejected a brightline rule distinguishing the rights of independent contractors and [government] employees . . . ." McClintock, 169 F.3d at 819.  Roth's dissent concludes that the logical extension of these rulings should leave the lower courts to infer "that all independent contractors fall within the standard set forth in Umbehr, O'Hare, and in the government employee cases." Id. at 820 (likening bidders for government contracts to potential hirees for government employment).

The Fifth Circuit, in Oscar Renda, 463 F.3d 378, adopted Judge Roth's dissent in its interpretation of the Umbehr decision.  The lawsuit in Oscar Renda involved Renda's bid for a city contract. Id. at 380.  Renda submitted the lowest bid but was allegedly rejected by the city because it had previously filed a lawsuit against the city. Id.  In upholding Renda's claim, the Fifth Circuit held that, based upon the Supreme Court's analysis in Umbehr, "the Court would not require a contractor to have a prior relationship with a governmental entity before being able to assert a First Amendment claim . . . ." Id. at 385-86 (postulating that "the contractor-like the individual job applicant-is protected by the First Amendment if its bid is rejected in retaliation of its exercise of protected speech.)   Other courts have followed the Fifth Circuit in its expansion of this First Amendment protection.  See Lucas v. Monroe County, 203 F.3d 964, 973 (6th Cir. 2000) (finding valid First Amendment claim when tow company without a pre-existing contractual relationship was

16

**Civil No. 10-1834 (GAG)**

1    allegedly removed from "call list" for making political statements); see also Yadin Comapny, Inc.

2    v. City of Peoria, 2007 WL 63611 (D. Ariz. 2007) (citing the reasoning in Oscar Renda to conclude

3    that bidders for government contracts are entitled to First Amendment protection).

4         Defendants rely upon the Third Circuit's holding in McClintock to argue that DVG is unable

5    to state a valid claim for relief.  (See Docket No. 70 at 3.)  Defendants also highlight that this court

6    has previously followed the McClintock ruling in Prisma Zona Exploratoria de P.R. Inc. v. Calderon,

7    162 F. Supp. 2d 1, 8 n.7 (D.P.R. 2001) (following McClintock by interpreting the Supreme Court's

8    ruling in Umbehr as "*refus*[*ing*] to extend First Amendment Protection to bidders or applicants of

9    government contracts") (emphasis added).[8]  However, when given the opportunity to answer this

10   question on appeal, the First Circuit chose not to address it.  See Prisma Zona, 310 F.3d 1, 7-8 (1st

11   Cir. 2002) (deciding the Prisma Zona appeal on the fact that defendant's politically motivated

12   determination not to choose plaintiff was permissible as this was a "policymaking" role.)

13        In the absence of controlling authority, the court is persuaded by the Fifth Circuit's reasoning

14   in Oscar Renda.  The logical extension of previous Supreme Court rulings persuade this court to

15   conclude that the Court's previous evasion of this question does not necessarily preclude the

16   extension of the rights recognized by the Court in Umbehr.  The court finds it necessary to answer

17   this question today as DVG's claim does not suffer from the same pleading inadequacies previously

18   recognized by the First Circuit in Centro Medico.  406 F.3d at 10.  DVG has supplied sufficient

19   evidence demonstrating that its " [constitutionally protected] conduct was a substantial factor or a

20   motivating factor driving the allegedly retaliatory decision." Id.; (See Docket Nos. 1-26; 1-27; 1-42;

21   40-10).  Moreover, Plaintiffs are applying a facial challenge to the use of the No Litigation Clause

22   by alleging that its future incorporation into PRPA's bidding documents constitutes a *per se*

23   constitutional violation (see Docket No.1 at 45-48).  Therefore, the question whether DVG's pending

24   lawsuit was the motivating factor behind PRPA's decisions to previously exclude DVG from its

25

26        [8] While the court recognizes that persuasive authority from this court has previously followed

27   McClintock, the court today disagrees with the District Court's analysis in Prisma Zona.

28                                              17

Civil No. 10-1834 (GAG)

1    bidding process, is not determinative of this issue.

2         Defendants further aver, that even if the court is willing to extend First Amendment

3    protections to bidders for government contracts, DVG is still unable to state a claim under the First

4    Amendment.  Defendants contend that Plaintiff cannot prevail on its suit because the contract suit

5    that DVG contends led to the alleged retaliation concerns exclusively DVG's personal interest and

6    is not a matter of public concern.  (See Docket No. 71 at 11-12.)

7         A government employee's speech is only protected under the First Amendment if it involves

8    matters of public concern.  Connick v. Myers, 461 U.S. 138 (1983).  The law in the First Circuit is

9    unclear as to whether or not an *independent contractor* complaining of its rights to petition the

10   government for redress under the First Amendment must also meet this "public concern"

11   requirement.  See Boyle v. Burke, 925 F.2d 497, 505 (1st Cir. 1991) (discussing, in dicta, the

12   applicability of the "public concern" doctrine in context of *government employees* claim under the

13   petition clause) (emphasis added).  In Campagna v. Mass. Dept. of Environmental Protection, 334

14   F.3d 150 (2003), the First Circuit, although deciding the case on other grounds, applied the Sixth

15   Circuit's analysis in Gable v. Lewis in answering this question.  See Campagna, 334 F.3d 150, 154-

16   55 (2003) (citing Gable v. Lewis, 201 F.3d 769, 771 (6th Cir. 2000) (choosing not to apply "public

17   concern" test to petition clause claim by *independent contractor* because: (1) the petition clause is

18   not generally related to matters of public concern; and (2) the reason for test– maintaining order in

19   the governmental workplace– did not apply) (emphasis added)).  Because there is no controlling

20   precedent to guide the court's decision, the court adopts the First Circuits's dicta in Campagna and

21   finds that the "public concern" doctrine does not apply in the context of petition clause claims by

22   independent contractors.  Accord San Filippo v. Bongiovanni, 30 F.3d 424, 442 (3rd Cir. 1994)

23   (finding that the "public concern" test does not apply to a government employee's First Amendment

24   claim under the petition clause); but cf. Cobb v. Pozzi, 363 F.3d 89, 105-6 (2nd Cir. 2004) (finding

25   that the "public concern" requirement applies to petition clause claims and citing other circuits that

26   have concluded the same).

27

28                                                    18

**Civil No. 10-1834 (GAG)**

However, regardless of whether the "public concern" doctrine applies under these circumstances, the court finds that although DVG's underlying "speech" concerns a private dispute, it has demonstrated that its right to petition the court for redress touches upon paramount issues of public concern.  See Levinsky's, Inc. v. Wal-Mart Stores, Inc., 127 F.3d 122, 133 (1st Cir. 1997) (citing Rankin v. McPherson, 483 U.S. 378, 386 & n. 11 (1987) ("[P]rivate statements can touch on matters of public concern.")).  In support of its claim for injunctive relief, DVG alleges the "chilling effect" that use of the No Litigation Clause will have on the construction industry.  (See Docket No. 1 at 45-48.)   Similarly, the letter from the General Contractors of America, Puerto Rico Chapter ("AGC") addressed to Morales and Rodriguez (Docket No. 1-28), as well as the *amicus curaie* filed by AGC (Docket No. 76-1) demonstrate the universal interests implicated by DVG's instant complaint.  AGC's *amicus curaie* highlights that the Puerto Rico Electric Power Authority and the Puerto Rico Infrastructure Finance Agency have recently incorporated language similar to the No Litigation Clause into their bidding documents.  (See Docket No. 76-1 at 2-3.)  Thus, the effects of DVG's instant suit extend far beyond DVG's present concerns over its contractual dispute with PRPA.[9]

In light of the above findings, the court finds that DVG has demonstrated a likelihood of success on the merits of its First Amendment claim for injunctive relief.

---

[9]  DVG also brings attention to the fact that Article XX of the Reglamento establishes the right of a dissatisfied bidder for a PRPA project to appeal from the Board of Bid Appeals to the Appeals Court of Puerto Rico.  (See Docket No. 1 at ¶ 73.)  The strict application of the No Litigation Clause, as it is loosely defined in PRPA's bidding documents, would permit PRPA to summarily exclude a bidder for taking advantage of its right to seek appeal of PRPA's determination.  Such a result cannot be intended by the Reglamento.  See San Filippo, 30 F.3d at 442 ("[W]hen government-federal or state-formally adopts a mechanism for redress of those grievances for which government is allegedly accountable, it would seem to undermine the Constitution's vital purposes to hold that one who in good faith files an arguably meritorious "petition" invoking that mechanism may be disciplined for such invocation by the very government that in compliance with the petition clause has given the particular mechanism its constitutional imprimatur.").

Civil No. 10-1834 (GAG)

1

### b.  Potential for Irreparable Harm

2   DVG alleges that the continued inclusion of the No Litigation Clause in PRPA's bidding

3   documents will result in irreparable harm to both its ability to conduct its own business as well as

4   the construction industry's ability to partake in a fair bidding process.  (See Docket No. 28.)

5   The court finds that this *de facto* exclusion from PRPA's bidding process based on a party's

6   exercise of its rights under the First Amendment sufficiently demonstrates the potential for

7   irreparable harm.  "It is well established that the loss of first amendment freedoms constitutes

8   irreparable injury."  Maceira v. Pagan, 649 F.2d 8, 18 (1st Cir. 1981) (citing Elrod v. Burns, 427 U.S.

9   347, 374 (1976)); see also Vaqueria Tres Monjitas, Inc., 587 F.3d at 484 (1st Cir. 2009) ("While

10  certain constitutional violations are more likely to bring about irreparable harm, we have generally

11  reserved this status for "infringements of free speech, association, privacy or other rights as to which

12  temporary deprivation is viewed of such qualitative importance as to be irremediable by any

13  subsequent relief.")

14  PRPA contends that DVG's alleged harm cannot be irreparable as a clear remedy exists under

15  the Uniform Administrative Procedure Act of Puerto Rico ("LPAU"), which permits a dissatisfied

16  bidder participating in the procurement process to seek reconsideration of the agency's

17  determination.  (See Docket No. 41 at 14-15.)  However, PRPA overlooks the fact that, pursuant to

18  the No Litigation Clause,  DVG as well as other potential bidders that have "conflicting interests"

19  with either the Commonwealth of Puerto Rico or its agencies or instrumentalities will continue to

20  be excluded from bidding on PRPA projects as long as their "interests" remain "conflicting."  This

21  broad exclusion prevents said parties from even submitting a bid for contracts, thus frustrating their

22  efforts to take advantage of any process for reconsideration.  Moreover, as recognized in footnote

23  seven, the very process of appeal constitutes grounds, under the No Litigation Clause, to exclude a

24  party from the bidding process.

25

### c.  Public Interest and Competing Burdens

26  The court finds that the factors of public interest as well as the opposing burdens that will

27

28
                                        20

**Civil No. 10-1834 (GAG)**

be placed upon the parties weigh in favor of granting the preliminary injunction.  First and foremost, granting a preliminary injunction against the future use of the No Litigation Clause avoids the immediate potential for the "chilling" of speech potentially protected under the First Amendment.  See Bates v. State Bar of Arizona, 433 U.S. 350, 380 (1977) (recognizing that the "possible harm to society from allowing unprotected speech to go unpunished is outweighed by the possibility that protected speech will be muted.").  Furthermore, in granting DVG's remaining request for preliminary injunctive relief, the court does not delay the construction of projects that have already commenced, nor does it increase overhead costs of those projects already awarded.  Therefore, Defendants' concerns that public funds will be wasted by the granting of a preliminary injunction (see Docket No. 41 at 17) are unwarranted.  Finally, the potential burden presented by a party's unconstitutional exclusion from the bidding process far outweighs the burden on PRPA to consider bids from parties that may have "conflicting interests" with PRPA or the Commonwealth.

**IV.    Conclusion**

Based on the foregoing analysis, the court **GRANTS** Plaintiff's motion for preliminary injunction (Docket No. 3) as to its First Amendment claim against Morales and Rodriguez in their official capacities.  Accordingly, the court **ENJOINS** PRPA and its officers from future enforcement of the No Litigation Clause as it appears at Article VIII, Paragraph P, Item 4 of the Mercedita Airport bidding documents.[10]  It also **ENJOINS** the inclusion of the bidder exclusion language as it appears in the LMMIA-USDA Advertisement for Bids.[11]  The Court **DISMISSES** all other claims before

---

[10] "The Contractor certifies that it does not represent or will not accept to represent interests in conflict with those of the Authority, and that he does not represent any complaint against the Commonwealth of Puerto Rico, its agencies or instrumentalities."  (See Docket No. 1-16 at 23, ¶ P.4)

[11] "The Puerto Rico Ports Authority will reject any bid submitted by any bidder which represents interests in conflict with those of the Authority (PRPA), and has any complaint or lawsuit against the Authority, the Commonwealth of Puerto Rico, its agencies or instrumentalities."  (See Docket No. 1-42.)

**Civil No. 10-1834 (GAG)**

it.  Plaintiff's state law claims for tortious interference with contractual relations and defamation are

**DISMISSED** without prejudice.

**SO ORDERED.**

In San Juan, Puerto Rico this 22nd day of November, 2010.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge

22